IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

C. WILLIAM C.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-02214-AP

**OPINION & ORDER**

POTTER, United States Magistrate Judge:

Plaintiff C. William C. brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff argues that the Administrative Law Judge (ALJ) erred by (1) failing to give clear and convincing reasons to discount Plaintiffs subjective symptom testimony and (2) finding the medical opinion of Thomas W.L. Potter, PhD, unpersuasive.[2] Pl.'s Br., ECF No. 9. For the

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

[2] Alternatively, Plaintiff argues the ALJ erred by determining that Plaintiff would be more functional if he stopped using marijuana and alcohol without providing a Drug and Alcohol materiality analysis as required by 20 C.F.R. § 416.935(a). Because the Court finds the ALJ erred under Plaintiff's primary arguments, the Court need not address Plaintiff's alternative argument.

reasons outlined below, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff applied for SSI on May 10, 2023, alleging disability since June 13, 2013. Tr. 230. The claim was denied initially and upon reconsideration. Tr. 87, 94. Plaintiff requested a hearing before an ALJ and appeared before the Honorable John D. Sullivan on August 14, 2025. Tr. 36–63. In a written decision dated August 25, 2025, ALJ Sullivan determined that Plaintiff was not disabled under the Social Security Act. Tr. 12-26. Plaintiff sought review from the Appeals Council; the Appeals Council declined review. Tr. 1. He then filed this action for judicial review.

Plaintiff is currently 44 years old. *See* Tr. 65. Plaintiff alleges disability due to a bad back, memory loss, brain injury, nerve damage on his left hand, and bad knees. Tr. 62. Plaintiff has at least a high school education and has no relevant prior work experience. Tr. 24.

**STANDARD OF REVIEW**

When reviewing the decision of the ALJ, district courts view questions of law de novo. *Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025). But when there is no legal error, the denial of benefits will only be overturned if the ALJ's decision "is not supported by substantial evidence." *Id.* (internal quotation and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). This is not a high bar; substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation

omitted). The court may not substitute its judgment for that of the ALJ when the evidence could support either affirming or reversing the ALJ's decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**DISCUSSION**

A person is disabled when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining if someone seeking benefits is disabled, the ALJ applies a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). If at any point in the five-step process the ALJ determines that the person is or is not disabled, the process stops. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

The first step looks at whether the claimant is doing "substantial gainful [work] activity;" if they are, they are not disabled. 20 C.F.R. § 404.1520(a)(4)(i). The second step focuses on the claimant's physical or medical impairment; a claimant is not disabled unless they can show a severe impairment that lasts at least a year or is expected to result in death. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ asks whether the severity of the impairment meets or equals one of the impairments listed by the Commissioner of Social Security. *Id.* § 404.1520(a)(4)(iii). If the impairment is equivalent to one of the listed impairments, the claimant is presumptively disabled. *Id.* If not, the ALJ proceeds to the fourth step. *Id.* § 404.1520(a)(4)(iv). Prior to proceeding to steps four and five, the ALJ must determine the residual functional capacity (RFC). *Id.* § 404.1520(e). This analysis determines what a claimant can do on a sustained basis despite their limitations. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). Then,

the fourth step requires an analysis of the claimant's past work and residual functioning; if the claimant can still do their past relevant work, they are not disabled. *Id.* § 404.1520(a)(4)(iv). At the fifth step, the question is whether given the claimant's present abilities, there is another type of job they can do; if the claimant can do another job, they are not disabled. *Id.* § 404.1520(a)(4)(v).

Here, the ALJ determined that Plaintiff satisfied the first two steps of the analysis. Tr. 17. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing. Tr. 18. The ALJ then conducted the RFC assessment and determined that Plaintiff could perform light work, with the following additional limitations:

> [The claimant] can frequently lift/carry 10 pounds frequently and lift/carry 20 pounds occasionally. He can push/pull as much as he can carry. He can sit for 6 hours and stand/walk for 6 hours. The claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. The claimant is able to understand, remember and carryout detailed but not complex instructions. The claimant's use of judgment is limited to making detailed but not complex work-related decisions. The claimant is able to occasionally interact with supervisors, coworkers and the public. The claimant is capable of dealing with frequent changes in a routine work setting.

Tr. 20.

Plaintiff has no relevant past work, but the ALJ determined, with the aid of testimony from the vocational expert, that Plaintiff could perform work as a marker (160,375 jobs in the national economy), a small products assembler II (28,749 jobs available in the national economy), and an inspector and hand packager (6,601 jobs available in the national economy).

Plaintiff takes issue with the ALJ's analysis of his own subjective testimony and the testimony of his providers. Pl.'s Br. 2.

## I. Plaintiff's Subjective Symptom Testimony

Plaintiff first argues that the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective pain testimony.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If this first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ then must determine the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "[T]he ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (emphasis added) (internal quotation and citation omitted). Specific, clear and convincing reasons are those which "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). When reviewing an ALJ's finding, the Court must look to "all the pages of the ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022).

Plaintiff has continuously testified that he needs to lie down during the day due to back pain. Tr. 43–47, 53–54, 62, 284-85, 335–37. He testified that he experiences constant back pain with shooting pains into legs. Tr. 284–85. He testified that he must lay down after physical activity to relieve his back pain and that he cannot sit or stand for long and must constantly

adjust his position. Tr. 284, 335–37. Plaintiff testified he lies down as much as he possibly can with his feet up to relieve the tension in his back. Tr. 43. He testified that his back pain has caused him to lose control of his bowels. Tr. 284. He testified that his back pain makes it difficult for him to sleep at night so he must nap during the day. Tr. 335–36. Plaintiff testified that he wakes up at different times due to his poor sleep schedule and tries to lay down as much as possible during the day. Tr. 43, 53. He testified that on a typical day he will spend time in his car in a position where he can put his knees up on the steering wheel to try to relieve his pain, take a nap with his legs up, and, depending on how his back feels, take a walk, go to the grocery store, or an appointment when necessary. Tr. 53–54. He testified he ends his days lying down until his back feels good enough to get up to try to cook, eat, or watch a movie until he tries to fall asleep. *Id.*

After considering the testimony, the ALJ discounted Plaintiff's subjective symptom testimony because it was inconsistent with Plaintiff's treatment records, objective medical evidence, and activities of daily living. Tr. 21. However, the ALJ provided no explanation for what evidence undermines that testimony. Tr. 20.

An ALJ must identify "sufficiently specific reasons" for discounting a plaintiff's testimony; it is not sufficient for an ALJ to "mak[e] only a 'single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with'" the RFC. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Unspecified claimant testimony and a summary of medical evidence are not sufficiently specific reasons that support a finding of non-credibility. *Id.*

Defendant attempts to undermine Plaintiff's argument by stating that an ALJ's explanation of testimony is sufficient for appellate review where it is "more than 'a single general statement that the claimant's statements…are not credible[.]'" *Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025) (quoting *Brown-Hunter*, 806 F.3d at 493). However, the Court is unpersuaded that the ALJ's explanation here meets the clear and convincing standard as the ALJ in *Nadon* does. Rather, Plaintiff argues that the ALJ erred when he merely stated his non-credibility conclusion and summarized the medical evidence supporting the RFC determination. The Court agrees.

When looking at the entirety of the decision, the ALJ merely recited the medical evidence and did not identify anything in the treatment records, objective medical testimony, or activities of daily living that could be viewed as inconsistent with Plaintiff's claimed limitations. Importantly, the ALJ did not explain how the medical evidence failed to support those limitations. The Court finds this does not provide "sufficiently specific reasons" for discounting Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 493.

The only statement that purports to provide reasoning to the ALJ rejecting Plaintiff's testimony is that "[t]here was no evidence of nerve root compression or compromise." Tr. 22. While Plaintiff's reliance on *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) on this point is misplaced,[3] the ALJ's reasoning is nonetheless insufficient to discount Plaintiff's testimony. The

[3] Plaintiff argues that *Trevizo* states that the "mildness" of spinal imaging cannot be relied on in assessing functional limitation due to pain. 871 F.3d at 676–77. However, this finding is misplaced and inconsistent with the analysis in *Trevizo*. In *Trevizo*, mildness of spinal imaging was used in relation to discount a medical opinion, not subjective symptom testimony. *Id.* at 677. Plaintiff's reliance on the single sentence in *Trevizo* that mentions a medical opinion's reliance on the mildness of spinal imaging is unsupported by the facts of that case.

ALJ identified no part of Plaintiff's testimony that is inconsistent with this finding and therefore could not link Plaintiff's testimony to this part of the record to support his non-credibility determination. The Court finds this was legal error. *See Brown-Hunter*, 806 F.3d at 494 (holding that the ALJ committed legal error because she failed to identify the testimony she found not credible and did not link that testimony to the particular parts of the record in support of her non-credibility determination); *see also Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (rejecting the government's argument that the ALJ provided specific, clear, and convincing reasons to support his credibility finding because he failed to connect the medical record to the claimant's testimony). Here the ALJ did not specifically identify any inconsistencies between Plaintiff's testimony and the medical record needed to move beyond general findings to meet the "requirements of specificity." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).

Furthermore, the ALJ found that a "limitation to light exertional work with capacity for occasional postural activities is consistent with objective medical evidence and [Plaintiff's] treatment records showing physical therapy." Tr. 22. Here, the ALJ seemed to rely on the January 2024 physical medicine consultative examination. Tr. 21–22. However, the January 2024 examination supports Plaintiff's testimony. Upon examination, Plaintiff was unable to "perform a straight leg raise due to pain complaint," "walk on heels and toes," or "hop on one foot." Tr. 546. The provider also noted that Plaintiff has reduced range of motion in his back. Tr. 547. The ALJ provided no explanation of how this medical evidence undermines Plaintiff's testimony and the Court finds this is not a clear and convincing reason for discounting it.

The ALJ also failed to explain why Plaintiff's activities of daily living are inconsistent with his symptom testimony. A plaintiff's activities of daily living can undermine a claim of

debilitating symptoms when the activities either "meet the threshold for transferable work skills" or contradict the plaintiff's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Throughout the decision, the only activity of daily living that the ALJ mentioned is the continued use of marijuana and alcohol. Tr. 23. The ALJ at no point suggested these activities were inconsistent with Plaintiff's need to "lay down after physical activity." This is also not a clear and convincing reason to discount that testimony.

**II. Dr. Potter's Opinion**

Plaintiff next argues that the ALJ erred by finding unpersuasive the medical opinion of examining psychologist Thomas W.L. Potter, PhD. Pl.'s Br. 2.

When evaluating medical evidence, the ALJ must look at the persuasiveness of the medical opinion with a focus on the "'supportability' and 'consistency'" of the findings. *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Id.* at 791–92 (citing 20 C.F.R. § 404.1520(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520(c)(2)).

In January 2024, Dr. Potter administered a neuropsychological screening assessment to examine Plaintiff's memory and cognitive issues and the impact on Plaintiff's ability to function. Tr. 553. During the assessment, Dr. Potter administered a "battery of cognitive testing and screening instruments" that led him to conclude that Plaintiff would have difficulty understanding and completing simple instructions and that Plaintiff has poor to fair concentration and attention. Tr. 561. Dr. Potter opined that due to his anxiety and need to work at a slow pace

with multiple breaks, Plaintiff's overall ability to sustain coworker and supervisor relationships is poor to fair. Tr. 561. He opined that Plaintiff has significant limitations in completing tasks including household responsibilities, maintenance of the residence, hygiene and grooming, independent travel, and food preparation. Tr. 561–62. Dr. Potter noted that these limitations are consistent with effects of documented traumatic brain injury and effects of depressive related functioning. Tr. 562. He noted that the overall information collected from Plaintiff appears consistent with the observed interactions and records provided. Tr. 562.

The ALJ found Dr. Potter's opinion unpersuasive. Tr. 24. Although the ALJ found that Dr. Potter's opinion was "supported with explanation and the results of the clinical interview and mental status exam," the ALJ discounted Dr. Potter's assessment because it failed to address Plaintiff's marijuana and alcohol use, because some limitations were supported only by Plaintiff's allegations, and because the record shows little treatment for his mental impairments. Tr. 24.

The ALJ's analysis here is similar to that of Plaintiff's subjective symptom testimony. With respect to the finding that Dr. Potter's opinion fails to address Plaintiff's marijuana and alcohol use, ALJ provides no explanation of how this use discredits Dr. Potter's cognitive testing. The ALJ contrasts Plaintiff's report during the assessment that he had cut down his use to 5-6 times per month with his August 2023 report that he was "heavily using marijuana." Tr. 24. Plaintiff's report in August 2023 is immaterial to Dr. Potter's opinion on Plaintiff's functioning because the ALJ points to no evidence that the use five months prior affected the outcomes of Dr. Potter's cognitive testing. Furthermore, Dr. Potter's assessment does address Plaintiff's alcohol use. Dr. Potter assessed that Plaintiff's "described use of alcohol appears

possibly problematic, while using [it] as a means to cope: a rule out for alcohol use disorders [is] indicated." Tr. 561. The ALJ's finding that Dr. Potter's opinion does not address Plaintiff's marijuana and alcohol use is not supported by substantial evidence.

The ALJ also found Dr. Potter's opinion unpersuasive because some "limitations are only supported by the claimant's allegations." Tr. 24. In making this finding, the ALJ cited the January 2024 examination asserting that Plaintiff's social interactions were "normal, but the *claimant* 'reported have anxiety, at times, working at a slowed pace, and needing multiple breaks, beyond those usually expected with a routine assessment.'" Tr. 24 (quoting Tr. 561) (emphasis added). However, this reasoning is not supported by the relevant objective medical evidence. Instead, during that assessment Dr. Potter observed Plaintiff's social interactions "appeared to be adequate," not "normal," and there is nothing in that sentence that says, "claimant reported." Tr. 24, 561. Rather, the listed limitations that follow are Dr. Potter's own observations. Tr. 561.

Even if the ALJ's reasoning were properly supported, the ALJ failed to address that many of Plaintiff's limitations are consistent with Dr. Potter's observations. For example, Dr. Potter observed that Plaintiff's "overall ability to sustain coworker and supervisor relationships are considered poor-fair." Tr. 561. Dr. Potter concluded that "Plaintiff's described limitations are consistent with effects of documented traumatic brain injury and effects of depressive related functioning" and the "overall information collected appears consistent with the observed interactions and records provided." Tr. 562. The ALJ's findings are not supported by this record.

Finally, the ALJ discounted Dr. Potter's opinion because the record "shows little treatment for his mental impairments, including no medication management and self-treatment

with marijuana and alcohol." Contrary to the ALJ's reasoning, this is not a reason to discount a medical opinion. While failure to seek treatment or follow prescribed treatment can be a valid reason to discount Plaintiff's testimony, it is "not a substantial basis on which to conclude [an examining physician's] assessment of claimant's condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (finding invalid an ALJ's reasoning to reject a claimant's assertion because it is "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")).

**III. Remedy**

Because the ALJ erred, the Court must decide whether to remand for benefits or for further proceedings. *See Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). However, an award of benefits may be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

Defendant argues that the "record as a whole creates serious doubt that Plaintiff is disabled." Def.'s Br. 16, ECF No. 10. Defendant cites to the "significant conflicts between Plaintiff's allegations, on the one hand, and unremarkable clinical findings and minimal and conservative treatment history, on the other." *Id.* Here, Defendant simply regurgitates the previous arguments that this Court has already rejected.

Applying *Garrison*, the Court finds that Plaintiff is disabled. Defendant has not identified any legitimate gaps or ambiguities in the evidence that would require further development of the record. "[A]llowing the ALJ to have a mulligan" is not a "useful purpose." *Garrison*, 759 F.3d at 1021. If Plaintiff's subjective symptom testimony or Dr. Potter's medical opinion were credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff testified that due to back pain and poor sleep at night, he needs to lie down during the day. Tr. 43–47, 53–54, 62, 284–85, 335–37. Similarly, Dr. Potter opined that Plaintiff's overall ability to sustain co-worker and supervisor relationships is poor to fair. Tr. 561. The vocational expert testified that for the given occupations in the national economy, the environment for which they are performed would not be equipped with a space to lie down. Tr. 62. The vocational expert testified that if a "hypothetical individual would have to lie down for one hour in an eight-hour day," even if that time were split up "five minutes here, ten minutes there, lunch hour," that such a limitation "would not be consistent with competitive employment" and would "affect their ability to do any of the jobs in the competitive, full-time employment sector." Tr. 61–62. The vocational expert's testimony demonstrates Plaintiff is unable to work due to his disability.

As the Ninth Circuit has emphasized, the credit-as-true analysis "is designed to achieve fairness and efficiency." *Id.* At 1019. "Delaying the payment of benefits by requiring multiple

administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage—financial, medical, and emotional. Such damage can never be remedied." *Varney v. Sec'y of Health and Hum. Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

This is a rare instance where remand for an award of benefits is appropriate. Plaintiff satisfies all three requirements under *Garrison*. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

DATED this 20th day of November, 2026.

/s/Amy E. Potter
Amy E. Potter
United States Magistrate Judge